907 So.2d 793 (2005)
STATE of Louisiana
v.
Dernell O. GARDNER.
No. 05-KA-62.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2005.
*795 Paul D. Connick, Jr., District Attorney Terry M. Boudreaux, Juliet Clark, Christopher Cox, Assistant District Attorneys Twenty-Fourth Judicial District Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
THOMAS F. DALEY, Judge.
On September 18, 2003, the Jefferson Parish District Attorney filed a Bill of Information charging the defendant, Dernell O. Gardner, with Count 1, disarming a police officer, in violation of LSA-R.S. 14:34.6, and Count 2, second degree battery, in violation of LSA-R.S. 14:34.1. The defendant was arraigned on September 19, 2003 and pled not guilty.
On March 11 and 12, 2004, the case was tried before a 12-person jury, which found the defendant guilty of the lesser included verdicts of battery on a police officer on Count 1 and simple battery on Count 2. On March 22, 2004, the defendant's Motion for Post Verdict Judgment of Acquittal, Motion for New Trial, and Motion to Arrest Judgment were denied. On that same date, the defendant waived sentencing delays, and the trial court sentenced him to imprisonment at hard labor for 15 months, the first 12 months to be without benefit of parole, probation, or suspension of sentence on Count 1, 30 days in parish prison on Count 2, and ordered the sentences to run consecutively.
The State filed a multiple bill alleging the defendant to be a second felony offender. The defendant denied the allegations of the multiple bill. On April 14, 2004, the defendant stipulated to the multiple bill. On that same date, the trial judge vacated the original sentence as to Count 1 and sentenced the defendant to imprisonment at hard labor for two years and six months. The defendant filed a Motion for Appeal that was granted.
Kenner Police Department Officer Chad Peterson testified that on July 16, 2003, at approximately midnight, he observed a truck run a red light at Williams Boulevard and Third Street in Kenner. Officer Peterson got behind the truck and activated his overhead lights and siren, and the truck pulled over in front of Lloyd's Furniture near the 2200 block of Third Street. Officer Peterson testified that the driver, whom he later identified as the defendant, exited the truck and the passenger opened the door. For safety reasons, Officer Peterson told them to get back in the truck and shut the doors.
*796 Officer Peterson observed the passenger door close and the defendant/driver reach back into the truck. Because Officer Peterson did not know whether the defendant was reaching for a gun, Officer Peterson got behind the door of his marked police vehicle. As he did so, the defendant started running across Third Street. Officer Peterson got back into his police car and followed the defendant in his vehicle, rather than on foot, because the defendant was a good distance away at that point. Officer Peterson then observed the defendant run down Jackson Street, veer off in between two houses, and jump over a fence. At 12:06 a.m., Peterson advised over the radio that a black male wearing a white shirt and shorts was running down Jackson Street.
Officer Peterson continued driving down Jackson Street, turned onto Kenner Avenue, and then came down Taylor Street in the hope of meeting the defendant on the other side. Officer Peterson parked his vehicle at 339 Taylor Street, because he thought that the defendant might try to exit in that area. Officer Peterson exited his vehicle and proceeded into an alleyway on the side of the house at 339 Taylor Street. As he did so, he encountered the defendant in the alleyway.
Officer Peterson hit the defendant on the back of his left leg with an expandable baton and then tackled him. They fell to the ground. As they were struggling, Officer Peterson attempted to use his pepper spray, but was unsuccessful. At some point during the struggle, Officer Peterson felt a push on his weapon like someone was trying to grab it. Officer Peterson explained that his weapon was secured inside the holster by two buttons, one on top and the other on the bottom. When Officer Peterson tried to push down on his weapon to prevent the defendant from taking it, he felt the defendant's hands on his weapon. Officer Peterson heard a snap, felt a strong hit on the back of his head, and then blacked out.
Officer Peterson testified that the dispatch audiotapes, which were played in court, indicated that he came to after the incident and advised over the radio that he was at 300 Jackson Street and that his gun was lost; however, he had no memory of that dispatch. On July 18, 2003, Officer Peterson positively identified the defendant in a photographic lineup. Officer Peterson testified that, after the incident, he was taken to East Jefferson General Hospital where he received medical treatment.
Kenner Police Department Officer Mark Traynham testified that at approximately 12:05 a.m. he received a dispatch regarding Officer Peterson and proceeded to the 300 block of Taylor Street. After Officer Tucker located Officer Peterson behind 339 Taylor Street, Officer Traynham ran to the back of the house, at that location. When he got there, he observed Officer Peterson laying face down on the ground and Officer Peterson's gun belt lying on the ground approximately one-and-a-half feet away from Officer Peterson's left leg.
Officer Traynham also observed that Officer Peterson's baton was out and expanded, his pepper spray canister was out, and Officer Peterson's .40 caliber Smith and Wesson handgun was not in the holster. Officer Traynham testified that Officer Tucker located the firearm approximately nine feet away from Peterson. Officer Traynham explained that they tried to communicate with Officer Peterson, but that Officer Peterson was disoriented, and they could not understand what he was saying. He further explained that Officer Peterson drifted in and out of consciousness, and, at one point, became totally still, but was still breathing. Officer Traynham testified that they secured the scene and that the ambulance arrived at 12:17 a.m.
*797 Kenner Police Department Detective George Hoffman testified that his investigation of the incident led him to 204 Ferrar Street, where he found the defendant at 7:00 a.m. hiding in the utility room crouched down between the water heater and a washer and dryer. The defendant was placed under arrest and taken to lock-up where he waived his rights and gave a 42-page statement.
In his statement, the defendant said that as he was traveling down Jefferson Highway and he ran a red light. He stated that when the police officer pulled him over, he jumped out of his vehicle and ran across the highway because he did not have a driver's license and had just run the red light. The defendant said that he ran in somebody's yard, jumped a few fences, went under a house, took a break, got up and ran again, went by "Melanie's" house, got a ride, and went back to Kenner. He explained that Melanie was the sister of his girlfriend, Nicole.
The defendant stated that he did not encounter the officer again. He denied striking the officer, removing the officer's gun from the holster, removing the officer's gun belt, or touching or grabbing the officer's gun. The defendant admitted that he was found in the washroom kneeling down.
After hearing this testimony and considering the evidence, the jury found the defendant guilty of the lesser included verdicts of battery on a police officer on Count 1 and simple battery on Count 2.
In his sole Assignment of Error, the defendant argues that the trial court erred in failing to grant him a new trial.
The defendant argues that the trial court erred in denying his Motion for a New Trial, because the verdict was contrary to the law and the evidence, and the jury instructions and the verdict form did not indicate that the jury had the option of finding him guilty of misdemeanor battery of a police officer. He claims that the State failed to present sufficient evidence to prove that his actions resulted in any type of injury to Officer Peterson. He contends that the jury only returned the felony battery of a police officer verdict, because it was not given the option of returning a misdemeanor battery of a police officer verdict and, therefore, the conviction should be set aside. The State responds that the evidence was sufficient to establish that the defendant was guilty of the charged offense.
In this case, the defendant filed a Motion for New Trial based on La.C.Cr.P. art. 851(1), arguing that the verdict was contrary to the law and the evidence, the State failed to prove the causation element of the felony battery charge beyond a reasonable doubt, and the court's instructions and jury form did not indicate the jury had the option of finding him guilty of misdemeanor battery of a police officer.[1] In addition, he filed a Motion for Post Verdict Judgment of Acquittal arguing that the State failed to prove beyond a reasonable doubt that he caused an injury to the officer that required medical attention.
*798 With respect to the denial of the Motion for New Trial based on La.C.Cr.P. art. 851(1), this Court in State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50 stated in pertinent part (citations omitted):
The denial of a defendant's motion for new trial, based on LSA-C.Cr.P. art. 851(1), presents nothing for review on appeal. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances.
The question of sufficiency of evidence is properly raised, in the trial court, by a Motion for Post Verdict Judgment of Acquittal under La.C.Cr.P. art. 821. State v. Ellis, 95-1005 (La.App. 5 Cir. 3/26/96), 672 So.2d 1007, 1008 (citation omitted), State v. Gibbs, 03-967 (La.App. 5 Cir. 12/30/03), 864 So.2d 866, 874. Thus, the defendant's assignment is properly before this Court.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. A different test is applied on appellate review.
The Louisiana Supreme Court has commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.

State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Rogers, 99-1378 (La.App. 5 Cir. 11/28/00), 772 So.2d 960, writ denied, XXXX-XXXX (La.12/7/01), 802 So.2d 641.
In this case, the defendant was charged with disarming a police officer and convicted of the lesser included offense of felony battery of a police officer.
In State v. Johnson, XXXX-XXXX (La.5/31/02), 823 So.2d 917, 919, the Louisiana Supreme Court discussed the difference between misdemeanor and felony battery of a police officer:
The crime of battery on a police officer is generally a six-month misdemeanor offense. La. R.S. 14:34.2(B)(1). However, the crime becomes a felony, and thereby entitles a defendant to a *799 jury trial, if it is committed within a correctional facility, La. R.S. 14:34.2(B)(2), or if it produces injury that requires medical attention. La. R.S. 14:34.2(B)(3).
The definition of felony battery of a police officer is found in La. R.S. 14:34.2, which provides in pertinent part:
A. (1) Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
* * *
B. (3) If the battery produces an injury that requires medical attention, the offender shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not less than one year nor more than five years, or both.
In State v. Breaux, 02-372 (La.App. 5 Cir. 9/18/02), 829 So.2d 463, 468, this Court set forth the essential elements of the crime of battery of a police officer as follows (citations omitted):
1. The intentional use of force or violence upon the person of a police officer ...;
2. without the consent of the victim;
3. when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
The defendant does not contend that the above three elements were not met. Rather, the defendant contends that the State failed to prove beyond a reasonable doubt that he caused an injury to Officer Peterson.
Officer Peterson testified that he encountered the defendant in an alleyway where they engaged in a physical confrontation. Officer Peterson explained that he hit the defendant on the back of his leg with a baton and then tackled him, that they fell to the ground and struggled, and that he felt a push on his weapon like the defendant was trying to grab it. Officer Peterson testified that when he tried to push down on his weapon to prevent the defendant from taking it, he felt the defendant's hands on his weapon. Officer Peterson heard a snap, felt a strong hit on the back of his head, and then blacked out. Officer Traynham testified that he observed Officer Peterson laying face down on the ground with his gun, gun belt, baton, and pepper spray canister lying on the ground. The evidence indicated that Officer Peterson was later taken to East Jefferson General Hospital where he received medical treatment.
Based on the foregoing, the jury could have reasonably concluded that the defendant either hit Officer Peterson on the back of the head, or caused Officer Peterson to hit his head, thus causing the officer's injury.
The defendant in his statement denied encountering or striking the officer; however, the jury apparently rejected the defendant's statement and found the State's witnesses to be more credible. It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
We find that in viewing the evidence in this case, in the light most favorable to the prosecution, the jury found beyond a reasonable doubt that the defendant was guilty of battery of a police officer that caused an injury requiring medical attention, *800 therefore, the verdict was not contrary to the law and evidence presented at trial.
Next, the defendant argues that the trial court erred by failing to read the definition of the responsive verdict of battery on a police officer that did not cause an injury requiring medical attention, La R.S. 14:34.2 A(1), as regard to Count 1, disarming a police officer. The defendant contends that the jury would have returned that responsive verdict had they been given the option. He bases this contention on the fact that the jury returned a verdict of simple battery, rather than second degree battery on Count 2.[2]
The State responds that the jury's verdict as to Count 1 was a proper responsive verdict authorized by the Louisiana legislature in La.C.Cr.P. art. 814(A)(14.1). However, the State notes that the Louisiana legislature listed only the responsive verdict of battery of a police officer without reference to felony or misdemeanor grade, and without reference to the additional factors that elevate misdemeanor battery of an officer to a felony offense.
Thus, the State points out that it is not clear that the Louisiana legislature intended the felony grade of battery of an officer to be a responsive verdict to the offense of disarming a police officer. The State asserts that if this Court determines that the Louisiana legislature did not intend the felony grade of battery of an officer to be responsive to the offense of disarming a police officer, and that the jury's verdict of "guilty of battery of an officer" operates as a conviction of the misdemeanor grade of the offense, then the only remedy would be resentencing under La. R.S. 14:34.2(B)(1).
After closing arguments, the trial judge provided the jury with the responsive verdicts for disarming a police officer as set forth in La.C.Cr.P. art. 814 A(14.1): guilty, guilty of attempted disarming a police officer, guilty of battery of a police officer, guilty of aggravated assault, not guilty.[3] With respect to the instruction regarding battery of a police officer, the trial judge read the following:
Battery of a Police Officer is the intentional use of force or violence upon the person of another without the consent of the victim, which force or violence produced an injury requiring medical attention, when the offender had reasonable grounds to believe the victim was a police officer acting in the performance of his duty ...
Thus, in order to convict the defendant of Battery of a Police Officer, you must find, beyond a reasonable doubt:
1) that the defendant intentionally used force or violence upon the person of the victim without his consent; and
2) that the defendant had reasonable grounds to believe the victim was a police officer and was acting in performance of his duty; and
3) that the use of force or violence produced any injury which required medical attention; and
4) that the victim was a police officer acting in the performance of his duty.
During deliberations, the jury sent a question to the trial judge requesting the definitions of the possible verdicts on the *801 charge of disarming a police officer. In response to that question, the trial judge re-read the instructions pertaining to that charge. After further deliberations, the jury returned with a verdict, finding the defendant guilty of the lesser included verdict of battery of a police officer.
The defendant filed a Motion in Arrest of Judgment and a Motion for New Trial arguing, inter alia, that the trial court erred by not reading both the misdemeanor (without injury) and felony (with injury) provisions of the battery of a police officer charge to the jury. In court, the State responded that the defendant was precluded from raising this alleged error because he failed to lodge a contemporaneous objection at the appropriate time. The defendant agreed that he made an error, but said that the plain error doctrine was applicable for egregious errors. He also stated that La.C.Cr.P. art. 804(B) mandated the lesser included offenses to be read in their entirety.
The trial judge said that defense counsel did not object to the jury charges at the appropriate time and, therefore, he could not come back now and say that they all made a mistake and get a new trial. The trial judge stated that he thought there was "far more than just sufficient evidence" for a reasonable trier of fact to conclude as they did. He also added that if he had thought that there was insufficient evidence to support the felony responsive verdict, he would have granted the defendant's Motion for New Trial or reduced the verdict to a lesser included offense, despite the defendant's failure to object to the responsive verdict list. The trial judge then denied the defendant's motions.
LSA-C.Cr.P. art. 801(C) provides:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
This Court has held that a defendant is required to make a timely objection under La.C.Cr.P. art. 801 in order to preserve a jury charge issue for review. State v. Nguyen, 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 910, writ application pending, 2005-K-220 (1/27/05); State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 166-167.
However, in State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 682-683, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587, this Court stated in pertinent part (citations omitted; footnote added):
Generally, a party may not assign as error a complaint to a jury charge in the absence of a contemporaneous objection. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to correct the error. However, an exception to the rule is when the error is in the definition of the crime and where the record bears full and sufficient proof of the error without the necessity for further hearing.
In Williamson,[4] the Court found that it is within the province of the reviewing court to entertain complaints of constitutional violations, notwithstanding that consideration of such complaint, more often than not, is deferred until the filing of a writ of habeas corpus, whether *802 they are objected to at trial or raised on appeal. When the asserted error involves the very definition of a crime, it is of such importance and significance as to violate fundamental requirements of due process. Williamson, 389 So.2d at 1331.
In State v. Armant, 97-1256 (La.App. 5 Cir. 5/27/98), 719 So.2d 510, 515, this Court also stated:
In State v. Thomas, 427 So.2d 428 (La.1982), the Louisiana Supreme Court noted that Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction raised for the first time on appeal. The Thomas court further stated that "This court has not created or recognized a plain error rule of general application." Id. at 435.
In this case, the defendant is correct in that the instruction read to the jury contained only the definition of battery of a police officer that produced an injury. La. R.S. 14:34.2(B)(3). However, the defendant admittedly did not object to the charges given before the jury retired. Therefore, this issue was not properly preserved for appellate review. Nguyen, supra; Dauzart, supra.
Nevertheless, even had the issue been properly preserved for review and error found, it was harmless. This Court has found that an erroneous jury instruction regarding the definition of the crime is subject to the harmless error review. See, State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 98. In determining harmless error, the proper analysis is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error". Jynes, 652 So.2d at 98 (citation omitted).
In this case, the guilty verdict actually rendered was "surely unattributable to the error". As was discussed previously and as the trial judge found, the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of felony battery of a police officer that caused an injury requiring medical attention.
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
In imposing the multiple offender sentence, the trial judge failed to state that this sentence was to be served without benefit of probation or suspension of sentence, pursuant to La. R.S. 15:529.1(G). This error patent does not require any action, because La. R.S. 15:301.1(C), as interpreted by State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, imposes these restrictions by operation of law. State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1157.
The defendant's convictions for both felony battery of a police officer and simple battery appear to present a double jeopardy problem on the face of the record.
In State v. Barton, 02-163 (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201-1202, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 817, this Court set forth the law regarding double jeopardy violations:
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. See LSA-C.Cr.P. art. 591. Double jeopardy provisions protect an *803 accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); State v. Washington, 95-771 (La. App. 5 Cir. 2/14/96), 670 So.2d 1255, writ denied, 98-0537 (La.9/25/98), 726 So.2d 7.
Louisiana courts have used two tests in examining violations of double jeopardy. The "distinct fact" test, commonly referred to as the Blockburger test, is taken from Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as follows:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
Accord, State v. Knowles, 392 So.2d 651, 654 (La.1980).
The second test is the "same evidence" test. In State v. Steele, 387 So.2d 1175, 1177 (La.1980), the Louisiana Supreme Court explained that test as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial....
The "same evidence" test is broader than Blockburger, "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." State v. Steele, 387 So.2d at 1177. Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
In this case, the defendant was charged with disarming a police officer and second degree battery. However, the defendant was convicted of the lesser included offenses of felony battery of a police officer and simple battery.
La. R.S. 14:34.2 defines felony battery of a police officer as a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty, and the battery produces an injury that requires medical attention. La. R.S. 14:35 defines simple battery as a battery committed without the consent of the victim.
There is a double jeopardy violation under the "same evidence test," because the evidence required to support a finding of guilt of one crime would have supported conviction of the other[5]; therefore, the remedy is to vacate the less severely punished crime and affirm the more severely punished offense. State v. Johnson, 97-867 (La.App. 5 Cir. 4/15/98), 711 So.2d 848, 852, writ denied, 98-1293 (La.10/9/98), 726 So.2d 20, citing State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990), and State v. Doughty, 379 So.2d 1088 (La.1980). Consequently, the conviction and sentence for felony battery of a police officer is affirmed, and the conviction and sentence for simple battery is voided.
In addition, the trial court failed to properly inform the defendant *804 that the prescriptive period for filing post-conviction relief is two years after his judgment of conviction and sentence has become final. La.C.Cr.P. art. 930.8. State v. Hutchinson, 02-60, p. 10 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509. A review of the March 22, 2004 sentencing transcript reveals that, at the hearing, the trial court informed the defendant that he had "two years from the date his sentence becomes final to file for post-conviction relief." However, this sentence was vacated after he was found a multiple offender. At the April 14, 2004 multiple offender hearing, the trial court re-sentenced the defendant, but failed to inform him of the correct prescriptive period for filing an Application for Post-Conviction Relief. This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. See, State v. George, 99-887, p. 3 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Even though the commitment/minutes entries for both of the defendant's sentencing hearings indicate a complete advisal was given, the sentencing transcript prevails when there are discrepancies. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, this case is remanded, and the trial court is ordered to properly inform the defendant of the correct prescriptive period for filing an Application for Post-Conviction Relief by sending written notice to the defendant within ten days of the rendition of this Court's opinion, and filing written proof that the defendant received the notice, in the record. Id.
For the foregoing reasons, the defendant's conviction and sentence for felony battery of a police officer is affirmed, his conviction and sentence for simple battery is voided, and the case is remanded and the trial court ordered to inform the defendant of the correct prescriptive period for filing an Application for Post-Conviction Relief.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] La.C.Cr.P. art. 851 provides in pertinent part:

The Motion for a New Trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence.
[2] Simple battery is a battery committed without the consent of the victim. La. R.S. 14:35. Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. La. R.S. 14:34.1.
[3] The written jury charges, in the record, indicate that the above responsive verdicts were given to the jury. A review of the written jury instructions shows notations; however, none pertain to the issue in question.
[4] State v. Williamson, 389 So.2d 1328, 1331 (La.1980).
[5] See, State v. Johnson, 33,791 (La.App. 2 Cir. 10/20/00), 771 So.2d 798, 804.