MARION F. EDWARDS, Judge.
1 üDefendant/appellant, Arthur Thomas (“defendant”), appeals his conviction and sentence on a charge of armed robbery in violation of LSA-R.S. 14:64. For the reasons that follow, we affirm.
After entering a plea of not guilty at the arraignment, defendant filed a motion to suppress the identification that was denied by the trial court after a hearing. Marc Bercegeay, one of the two victims, testified at the hearing on that motion. Defendant was subsequently tried by a jury and convicted of the charge of armed robbery. He was sentenced to serve ninety-nine years in prison at hard labor.
Defendant filed a motion to reconsider sentence that was denied and a timely appeal that was granted.

\ .FACTS

Marc Bercegeay (“Mr. Bercegeay”)[1] and Jason Mansfield (“Mr. Mansfield”) were eating lunch at Mr. Bercegeay’s apartment when someone, claiming to be “Kevin” knocked on the door. Mr. Mansfield answered the door because Mr. Ber-cegeay knew someone named Kevin. However, the person at the door was not Kevin. Mr. Bercegeay asked the visitor to identify himself. The man, later identified as defendant, answered that Mr. Berce-geay knew who he was and what this was about. At that point, defendant pulled out a gun and instructed Mr. Mansfield to lie down on the floor. Defendant told Mr. Bercegeay to give him money. Mr. Berce-geay pulled some cash out of his pocket and gave it to defendant. Defendant stated that he wanted the “rest of the money” and indicated that he knew Mr. Bercegeay cashed a check that morning. Defendant grabbed Mr. Bercegeay’s wallet and a struggle ensued. Mr. Bercegeay refused to let go of his wallet and defendant struck Mr. Bercegeay on the head with the gun.
During the struggle between defendant and Mr. Bercegeay, Mr. Mansfield got up and ran out of the door and called for help. Defendant grabbed a set of keys and a cell phone and ran out of the back door. As he was calling 911, Mr. Mansfield observed defendant riding towards 1-10 on a bicycle.
*605 The crime was investigated by Deputy Daniel Ordoyne (“Deputy Ordoyne”) and Detective Michael Miller (“Detective Miller”) of the Jefferson Parish Sheriffs Office. Deputy Ordoyne obtained a description of the perpetrator, which he broadcasted to fellow officers. The deputy also took photos of Mr. Bercegeay’s injuries.
Mr. Bercegeay indicated to the officers that a woman named Terry, an old drug acquaintance, may be involved in the robbery. Mr. Bercegeay arrived at this | conclusion because he saw Terry pass by his apartment about thirty seconds after the robbery. Mr. Bercegeay told Detective Miller that he called his stolen cell phone about ten minutes after the incident and someone, who identified himself as “Hawk, Eddie or Big A” answered the phone.
Police found a bicycle and a cap on the side of a building on the 1-10 Service Road about four blocks from the robbery shortly afterwards. Mr. Mansfield recognized the cap as the one the perpetrator was wearing, and the bike as the one the perpetrator was riding as he left the scene.
Mr. Bercegeay described the perpetrator to police officers as a tall, heavy-set black man wearing a baseball cap, dark jeans, and shirt. The following day, Mr. Bercegeay identified the defendant in a photo lineup presented to him by investigating officers. Mr. Mansfield also identified defendant in a separate photo lineup.
Mr. Bercegeay, through his own investigating, learned that a man matching defendant’s description and riding a silver bike frequented a nearby scrap metal yard. The manager of the scrap metal yard knew the man as “Big A.” Another employee of the business described Big A and said his name was Arthur. Mr. Berce-geay gave this information to police investigators.
As a result of the investigation, defendant was arrested and charged with the crime.

LAW

In brief to this Court, defendant assigns two errors and requests a review of the record for errors patent on the face of the record.[2] In the first, he asserts the trial court erred in failing to grant his motion for new trial. In defendant’s written | Rmotion for new trial, he argued that there was newly discovered evidence, but also mentions that the verdict is contrary to the law and evidence. At the hearing, however, he argued that the basis of his motion was essentially that new evidence was revealed at trial to show that other people were present at the time of the incident and that evidence could have changed the verdict had it been provided in a timely manner. The trial judge denied the motion, noting that defendant had possession of the 911 tape that mentioned other people and that it was the defense who played a portion of the tape at trial while cross-examining Mr. Mansfield. The court noted that defendant addressed the issue in questioning Mr. Mansfield and that his questioning was not restricted by the court.
On appeal, defendant is arguing that the trial court erred in denying his motion for new trial because the evidence *606 was legally insufficient.[3] Defendant briefly mentions that any defense based on these potential witnesses was hindered because Mr. Mansfield was inconsistent as to who was present at the time of the alleged armed robbery. However, the focus of his argument is the sufficiency of the evidence, not the trial judge’s denial of his motion for new trial based on newly discovered evidence.
Generally, the denial of a motion for new trial presents nothing for review on appeal.[4] However, this Court has reviewed the sufficiency of evidence used to convict under such circumstances.[5]
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, ^viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[6] When circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[7] The rule as to circumstantial evidence is, assuming every fact to be proved that the evidence tends to prove, in order to convict, must exclude every reasonable hypothesis of innocence.[8] WTien circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[9] This statutory test works with the Jackson sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational trier of fact.[10]
To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon.[11] A gun used in connection with and at the scene of a robbery is as a matter of law a dangerous weapon.[12]
Defendant argues the evidence was insufficient because of Mr. Mansfield’s conflicting testimony. Defendant argues that *607 Mr. Mansfield told the 911 operator there were other witnesses present but told the detective that only he and Mr. Bercegeay were present in the apartment at the time of the robbery. Defendant |7argues that Mr. Mansfield testified at trial that no other witnesses were present, but he later stated that he could not recall but there may have been others there.
Defendant argues that the evidence does not support Mr. Mansfield’s testimony and that the many inconsistencies combined with the lack of any corroborating evidence all rebut this conviction.
Initially, Mr. Mansfield testified that he and Mr. Bercegeay were alone at the time of the incident. On cross-examination, after hearing the 911 tape that was played, he recognized that he told the 911 operator others were there. On redirect, however, the matter was clarified. Mr. Mansfield agreed that what he said on the 911 tape was in reference to neighbors who heard what was happening and came to help Mr. Bercegeay.
It appears another discrepancy at trial occurred when Mr. Mansfield acknowledged that he told the police in his statement that defendant produced a black weapon from his waistband that was a .45, which is a semi-automatic weapon. Mr. Mansfield testified at trial, however, that the gun was a “big black automatic gun.”
Even assuming these discrepancies were not explained, they go to the credibility of the witness. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence.[13]
Defendant also asserts there is a lack of any corroborating evidence. However, it is noted that Mr. Mansfield testified regarding several facts that were corroborated by Mr. Bercegeay’s testimony. Both victims testified that Mr. Mansfield was at Mr. Bercegeay’s apartment, that Mr. Mansfield opened the door, Rand that, when defendant knocked on the door, he claimed to be Kevin. Both Mr. Bercegeay and Mr. Mansfield testified that defendant pulled out a gun and told Mr. Mansfield to lie down on the floor. Both testified that defendant wanted money, that a struggle ensued, and that Mr. Mansfield ran for help.
As Mr. Mansfield called 911, he saw the perpetrator he later identified as defendant leave on a bicycle and told the operator in what direction defendant was heading. Mr. Mansfield was taken to a location about four blocks from the robbery where a bicycle was found. He recognized the bicycle as the one defendant was riding. Fingerprints lifted from the recovered bicycle matched defendant’s fingerprints.
Based on the foregoing, we find the evidence was sufficient to support defendant’s conviction for armed robbery. Accordingly, we find no merit in this assignment.
In the second assignment of error, defendant avers the trial court imposed an excessive sentence. Because we find an error patent that requires the sentence be vacated, the argument on excessive sentence is rendered moot.
Defendant was convicted on May 20, 2008. On May 29, 2008, the trial court denied defendant’s motion for new trial. Immediately thereafter, the trial court stated, “[a]ll right. Mr. Thomas, is there anything you wish to say on your behalf, *608 or, Mr. Lambert, you wish to say on Mr. Thomas’s behalf before I sentence him?” Defense counsel replied, “[n]o, Your Hon- or.” Defendant stated, “I think I’ll hold my tongue, sir.” The trial court then sentenced defendant.
A twenty-four-hour delay in sentencing after denial of a motion for new trial is required unless waived by defendant.[14] Defendant was not afforded a twenty-|four-hourn delay between the denial of his motion for new trial and sentencing, and there is no indication that defendant expressly waived the delay.
When the defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated by law cannot be considered harmless error.[15] In this instance, defendant’s sentence was not mandatory, and he did challenge his sentence on appeal. Under these circumstances, we hereby vacate the defendant’s sentence and remand the case for re-sentencing.[16]
Further, as noted by the State in its brief, the trial court failed to properly inform defendant of the time period within which to apply for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. The trial court is reminded to properly advise the defendant in accordance with article 930.8 upon re-sentencing.

CONVICTION AFFIRMED; SENTENCE VACATED; MATTER REMANDED.

. Mr. Bercegeay died of unrelated causes before the trial on the merits. The transcript of his testimony at the motion to suppress the identification hearing was read to the jury.

. In addition to the two assignments of error presented for our review by defense counsel, defendant has written a letter to this Court questioning the accuracy of the transcript of the hearing on the motion to suppress the identification in which Mr. Bercegeay testified. This Court has reviewed the accuracy of the certified transcript read to the jury at trial and is satisfied that it is correct.

. The question of sufficiency of evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Hooker, 05-251 (La. App. 5 Cir. 1/17/06), 921 So.2d 1066, 1074. Although defendant filed a motion for new trial, he did not file a motion for post-verdict judgment of acquittal under LSA-C.Cr.P. art. 821. Procedurally, there is a distinction between the two motions. Nonetheless, the failure to file a post-verdict judgment of acquittal does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982).

. State v. McFarland, 06-970 (La.App. 5 Cir. 5/29/07), 960 So.2d 1132, 1136-37, writ denied, 07-1448 (La. 1/7/08), 973 So.2d 732.

.Id.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608.

. LSA-R.S. 15:438.

. McFarland, supra.

. State v. Watson, 08-214 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 783-84.

. LSA-R.S. 14:64(A); State v. Ragas, 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271, writ denied, 07-1440 (La. 1/7/08), 973 So.2d 732, cert. denied, -U.S.-, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008).

. State v. Refuge, 300 So.2d 489, 491-92 (La. 1974).

. Ragas, 960 So.2d at 271-72.

. LSA-C.Cr.P. art. 873.

. State v. Young, 04-1318 (La.App. 5 Cir. 4/26/05), 902 So.2d 461, 470.

. Id.