STATE OF LOUISIANA

VERSUS

STEVEN RODNEY

NO. 19-KA-195

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-7492, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

October 23, 2019

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
  **RAC**
  **MEJ**
  **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Paul D. Connick, Jr.
 Terry M. Boudreaux
 Gail D. Schlosser
 Zachary P. Popovich
 Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
STEVEN RODNEY
 Jane L. Beebe

**CHAISSON, J.**

Defendant, Steven Rodney, appeals his conviction and sentence for armed robbery. He specifically challenges the trial court's admission of other crimes evidence and the sufficiency of the evidence used to convict him. For the reasons that follow, we find no merit to defendant's arguments, and accordingly, we affirm his conviction and sentence.

## PROCEDURAL HISTORY

On December 1, 2017, the Jefferson Parish District Attorney filed a bill of information charging defendant with armed robbery, in violation of La. R.S. 14:64. Defendant pled not guilty at his arraignment. Following the resolution of some pre-trial motions, the matter proceeded to trial before a twelve-person jury on December 11, 2018. At the conclusion of the trial on December 13, 2018, the jury found defendant guilty as charged. Defendant thereafter filed a motion for acquittal notwithstanding the verdict and a motion for new trial, alleging in both that the State was unable to meet its burden of proof as to armed robbery. On December 26, 2018, the trial court denied defendant's motions.

On January 8, 2019, the trial court sentenced defendant to twelve years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The court ordered that the sentence be served concurrently with any other sentence defendant may be serving, including any time in federal custody. Defendant now appeals.

## FACTS

On March 7, 2014, at approximately 8:30 p.m., defendant entered the Walmart located on West Esplanade in Kenner and robbed Brittney Young, who, at the time, was working as a customer service cashier. Sergeant Jeff Adams of the Kenner Police Department investigated the robbery. Through the course of his investigation, Sergeant Adams learned that the perpetrator, later identified as

defendant, arrived at the Walmart in a Nissan SUV taxicab, entered the store, and after a few minutes of posing as a shopper, approached the customer service desk with a bag of candy. While standing at the service desk talking to Ms. Young, defendant, who was wearing a striped sweater and a Saints cap, pulled up his shirt, revealed a weapon in his waistband, and demanded the money from the register.[1] He then pulled out the gun and pointed it towards Ms. Young, who gave him money from the cash register, totaling approximately thirteen hundred dollars. Thereafter, defendant, who had put the weapon back into his waistband, ordered Ms. Young to follow him to the exit where he fled the premises in the SUV taxicab waiting for him in the parking lot.

Although Ms. Young gave a physical description of the perpetrator and his image was captured on video surveillance, Sergeant Adams was not able to immediately identify the suspect. However, during the course of his investigation, Sergeant Adams was informed of a Nola.com article regarding a robbery that had occurred at a retail store in New Orleans the previous day and contained a picture of the suspect, which matched the description of the suspect in the instant armed robbery. The name of the suspect from the New Orleans robbery was also unknown.[2]

---

[1] At trial, Ms. Young detailed her interaction with defendant. She maintained that he initially approached the customer service counter and asked her if he could make a purchase at that register. After replying "yes," defendant walked off and returned a few minutes later with a bag of candy. According to Ms. Young, as she was checking him out, the two were talking and joking around, and defendant was being flirtatious with her. Defendant then told her that he needed "everything" from out of the register. When she asked if he was serious, he took a gun out of his waistband, put it on the counter, and pointed it towards her. Ms. Young testified that she was very scared and gave defendant the money from the register. Thinking she had no choice, Ms. Young then complied with his directions to walk him to the exit of the Walmart. Video surveillance of the incident was played for the jury at trial.

[2] At trial, Morgan Felgemacher testified about the circumstances surrounding the New Orleans armed robbery. She explained that she was working at American Apparel on Magazine Street on March 6, 2014, when defendant walked into the store and engaged in a conversation with her. She recalled that defendant remained in the store for a while appearing as if he were shopping. When defendant finally approached the register, Ms. Felgemacher, who was standing near the register, could see him holding a gun on the counter pointed in the direction of her two co-workers. Ms. Felgemacher testified that she heard defendant say the words "money" and "clothes" and noticed that he had a bag with him. She recalled that her co-workers turned over the money at which point defendant left the store with the money and clothes. Video surveillance of the incident, which depicted a man in a Saints cap approaching the register and retrieving something from his waistband, was played for the jury at trial.

Sergeant Adams was later contacted by a detective from the New Orleans Police Department who had received information that Steven Rodney had been arrested in Las Vegas for similar robberies. Apparently, defendant had been arrested and pled guilty on April 22, 2015, in Las Vegas, Nevada, to nine counts of robbery of various stores that occurred in February and March of 2014 using the same *modus operandi* as the Louisiana armed robberies. Sergeant Adams explained that in the Las Vegas robberies, defendant would arrive in a taxicab, enter the store posing as a customer, produce a gun, and demand the cash from the register. Additionally, Sergeant Adams noted that the Kenner Walmart robbery was listed as relevant conduct in defendant's plea agreement pertaining to the Las Vegas robberies. [3]

Having acquired the suspect's name, Sergeant Adams obtained a photograph of defendant and compared it to the picture taken from the video surveillance of the Walmart robbery. Sergeant Adams thereafter compiled a photographic lineup and presented it to Ms. Young, who positively identified defendant as her assailant. Defendant was ultimately arrested and extradited back to Louisiana from Nevada on March 29, 2017.

At trial, defendant testified on his own behalf and admitted that he committed the robbery at the Kenner Walmart, as well as the New Orleans and Las Vegas robberies. He explained that he had a series of personal hardships, including a back injury, and that as a result, he became addicted to pain medication. Defendant thereafter began to commit robberies of various stores in

---

[3] Defendant's federal plea agreement, which set forth the facts surrounding the nine Las Vegas robberies, was introduced into evidence at trial. In addition, Officer Sean Hubbard of the Las Vegas Metropolitan Police Department testified that defendant was arrested and pled guilty to a series of nine robberies that occurred in Las Vegas in February and March of 2014. At the time of his arrest, defendant had an airline ticket in his possession establishing that he had flown to New Orleans on March 5, 2014, two days before the instant offense was committed, and also possessed a return ticket to Las Vegas dated March 8, 2014, one day after the instant offense. Officer Hubbard further testified that each of the robberies defendant committed in Las Vegas involved businesses such as Walmart, Walgreens, Office Max, and clothing stores and that defendant would enter the store, shop, bring the merchandise to the counter, and then demand the money from the cash register while brandishing a gun. Officer Hubbard also noted the unique way defendant arrived at the locations of the robberies, which was by taxicab.

order to get money to support his addiction. He maintained that he never used a real gun during any of the robberies, but rather committed many of the robberies, including the one at the Kenner Walmart, with a plastic toy "Airsoft" gun. However, defendant also testified that he needed the victims to think it was a real gun so he could get the money.

## SUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence used to convict him of armed robbery.[4] He specifically contends that the State failed to prove that he was armed with a dangerous weapon during the robbery, and at most, only proved a first degree robbery. Given this lack of proof, defendant asserts that the trial court erred in denying his motions for post-verdict judgment of acquittal and new trial, which challenged the sufficiency of the evidence used to convict him of armed robbery.

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, a reviewing court is required to consider the whole record and determine whether

---

[4] When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

In the instant case, defendant was found guilty of armed robbery, in violation of La. R.S. 14:64. To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon. *See* La. R.S. 14:64; *see also State v. Thomas*, 08-813 (La. App. 5 Cir. 4/28/09), 13 So.3d 603, 606, *writ denied*, 09-1294 (La. 4/5/10), 31 So.3d 361. Defendant does not contest that he committed the instant robbery at the Walmart in Kenner. Rather, he maintains that the State failed to prove that he was armed with a dangerous weapon,[5] pointing out that the gun used was not retrieved and that the only evidence suggesting that he possessed a real gun was Ms. Young's testimony. Defendant asserts that he used a plastic toy "Airsoft" gun and not a dangerous weapon; therefore, the State only proved he was guilty of first degree robbery, not armed robbery. We find no merit to defendant's arguments.

La. R.S. 14:2(A)(3) defines a "dangerous weapon" as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." This term is not limited to those instrumentalities which are inherently dangerous. A determination of the "dangerousness" of an object is based on the manner in which it is used and is a question of fact for the jury. *State v. Davis*, 07-544 (La. App. 5 Cir. 12/27/07), 975 So.2d 60, 71, *writ denied*, 08-380 (La. 9/19/08), 992 So.2d 952.

---

[5] Even though defendant only challenges this one particular element, we note that a review of the record under *State v. Raymo*, 419 So.2d 858, 861 (La. 1982), reflects that the State presented sufficient evidence to establish the remaining essential statutory elements of armed robbery through testimony and by means of the evidence presented at trial that defendant took approximately thirteen hundred dollars from Ms. Young through force or intimidation.

This Court has recognized that a toy gun can be considered a dangerous weapon for purposes of an armed robbery conviction if the jury finds that "the interaction between the offender and the victim created a highly charged atmosphere whereby there was a danger of serious bodily harm resulting from the victim's fear for his life." *State v. Washington*, 00-1312 (La. App. 5 Cir. 5/16/01), 788 So.2d 596, 601, *writ denied*, 01-1718 (La. 5/3/02), 815 So.2d 94; *State v. Cittadino*, 628 So.2d 251, 255 (La. App. 5th Cir. 1993).

In the present case, Ms. Young testified that defendant pulled out a gun, pointed it towards her, and demanded the money from the register. Ms. Young gave defendant the money and then complied with his directive that she follow him to the exit so he could make his escape. In testifying about the weapon, Ms. Young asserted that it looked "like a regular gun," that it did not look like a toy, and that throughout the encounter, she always thought the gun was real. Ms. Young was nervous and very scared and complied with defendant's instructions because she did not believe she had any other choice as defendant had the gun on him.

At trial, defendant testified that he did not use a dangerous weapon when he robbed Ms. Young, but rather a toy gun. However, defendant admitted on cross-examination that he needed Ms. Young to think the gun was real so that she would give him the money.

Given the evidence presented at trial, we find that the jury could have reasonably concluded that defendant was armed with a dangerous weapon at the time he committed the robbery of Ms. Young at the Kenner Walmart. In making this determination, we have considered defendant's particular argument that the State failed to prove he was armed with a dangerous weapon based on the fact that the gun used was not retrieved and that the only evidence suggesting that he possessed a real gun was Ms. Young's testimony. We note that no weapon need

ever be seen by the victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that the defendant was armed with a dangerous weapon. *State v. Page*, 02-689 (La. App. 5 Cir. 1/28/03), 837 So.2d 165, 176, *writ denied*, 03-951 (La. 11/7/03), 857 So.2d 517. Further, Ms. Young's testimony alone is sufficient to prove that defendant was armed with a dangerous weapon. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *State v. Caffery*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 203, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297.

Based on the foregoing, we find that the evidence presented by the State was sufficient to support the jury's determination that defendant was guilty of armed robbery. Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence are without merit.

### ADMISSION OF OTHER CRIMES EVIDENCE

On appeal, defendant also challenges the trial court's admission of other crimes evidence at trial pursuant to La. C.E. art 404(B). In particular, defendant complains that the trial court erred in allowing the State to introduce evidence regarding his nine Las Vegas convictions for first degree robbery and the alleged robbery that occurred at a clothing store in Orleans Parish the day before the instant offense. Defendant maintains that this other crimes evidence was more prejudicial than probative and was used to portray him as a bad person rather than prove an element of the crime charged.

Prior to trial, the State filed notices pursuant to La. C.E. art. 404(B) of its intent to introduce evidence regarding other robberies committed by defendant. In its notices, the State asserted that it intended to offer evidence of defendant's involvement in the Las Vegas robberies as an integral act, formerly known as the *res gestae* doctrine, explaining that defendant's Las Vegas robberies were crucial

to explain how defendant's photograph was placed into a lineup in the instant case. The State further asserted that the photographic evidence of defendant committing the armed robbery at the retail establishment in New Orleans constituted *res gestae* because it allowed the story of the crime to be told in its entirety by providing its immediate context of happenings in time and place. The State also contended that defendant's Las Vegas robberies and the robbery committed in Orleans Parish constituted evidence of system or *modus operandi* as they were factually similar to the instant offense in the manner in which they were committed.

At the subsequent hearings, the State again argued the evidence of the prior robberies was admissible as *res gestae* and to establish defendant's intent, identity, and *modus operandi* given the similarities between the crimes. In response, defendant argued that the prior robberies were irrelevant as the State could present its case without mention of the specifics of the other crimes. He contended that the prejudicial effect of the other crimes evidence was outweighed by any probative value. Defendant further maintained there was a lack of distinctive characteristics between the crimes, and therefore, the other crimes evidence did not fall under the exception of *modus operandi.*

After listening to the arguments of counsel, the trial court granted the State's notices, finding that any prejudicial effect did not substantially outweigh the clear probative value. In accordance with this ruling, the State introduced evidence at trial of defendant's nine Las Vegas robbery convictions and the New Orleans robbery that occurred at a clothing store the day before the instant offense.

Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404B(1); *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). However, when such evidence tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential

exceptions to this rule. *State v. Dauzart*, 02-1187 (La. App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct, referred to as *res gestae*, that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); *State v. Carter*, 15-99 (La. App. 5 Cir. 7/29/15), 171 So.3d 1265, 1280, *writ denied*, 15-1618 (La. 10/17/16), 207 So.3d 1068.

*Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. The *res gestae* doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances. The *res gestae* doctrine is designed to allow the story of the crime to be told in its entirety by proving its immediate context of happenings in time and place. *State v. Taylor*, 01-1638 (La. 1/14/03), 838 So.2d 729, 741-42, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). The test of integral act evidence is therefore not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. *State v. Colomb*, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *State v. Carter*, 171 So.3d at 1280.

In the instant case, we find that the trial court did not abuse its discretion in admitting the other crimes evidence as the prior robberies were integral act evidence relevant to show how defendant was developed as a suspect in the Kenner Walmart robbery. At trial, the State presented the testimony of Sergeant Adams and Officer Hubbard who discussed how defendant's identity was discovered and shared with law enforcement in Louisiana based upon crimes committed by defendant in Las Vegas. Without this information, Sergeant Adams would not have had a photograph of defendant to present in a photographic lineup to the victim in this case. The State could not have logically presented its case without discussions of the Las Vegas robberies as well as the Orleans Parish robbery, all of which were relevant in providing the jury with a complete picture of the events that led to defendant's arrest. *See State v. Carter*, 171 So.3d at 1280, where this Court agreed with the trial court's admission of evidence regarding the defendant's involvement in a prior armed robbery in another jurisdiction, noting "it was integral act evidence that was relevant to show how law enforcement was able to develop defendant as a suspect in the Jefferson Parish armed robberies."

Further, as asserted by the State, the other crimes evidence was admissible to prove system or *modus operandi*. Louisiana jurisprudence has long sanctioned the use of other crimes evidence to show *modus operandi*, as it bears on the question of identity, when the prior crime is so distinctively similar to the one charged, especially in terms of time, place, and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. *State v. Garcia*, 09-1578 (La. 11/16/12), 108 So.3d 1, 39-40, *cert. denied*, 570 U.S. 926, 133 S.Ct. 2863, 186 L.Ed.2d 926 (2013); *State v. Merritt*, 04-204 (La. App. 5 Cir. 6/29/04), 877 So.2d 1079, 1086, *writ denied*, 04-1849 (La. 11/24/04), 888 So.2d 228. However, to assure that *modus operandi* or system evidence involving crimes similar to the charged offense does not become a means of introducing character

and propensity evidence otherwise prohibited by La. C.E. art. 404(B), such evidence must be closely analyzed to determine whether it exhibits such peculiar modes of operation to distinguish them as the work of one person. Thus, in order to be admissible, the *modus operandi* employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person. *State v. Hills*, 99-1750 (La. 5/16/00), 761 So.2d 516, 521; *State v. Merritt*, *supra*.

In the instant case, Sergeant Adams explained, in the Las Vegas robberies, defendant would arrive in a taxicab, enter a retail store posing as a customer, produce a weapon, and demand the cash from the register. Moreover, with respect to the Orleans Parish armed robbery, the perpetrator was wearing similar clothing and used similar methods, i.e. posed as a customer, was friendly with the employees, brandished a weapon, demanded the money from the register, and then left with the money and the retail merchandise. This evidence, and the admissions of defendant that he would fly from Las Vegas to New Orleans committing robberies to obtain money for drugs, established a particular and unique pattern relevant to establishing defendant's intent, motive, and system, as well as his identity. Further, under the other "relevant conduct" section of the guilty plea paperwork from defendant's Las Vegas convictions, defendant even listed the New Orleans robbery and the Kenner Walmart robbery.[6]

Further, we agree with the trial court's determination that any prejudicial effect in admitting this evidence did not substantially outweigh the clear probative value. In fact, defendant freely testified about these other robberies at trial and seemingly used this evidence to support his assertion that he was only armed with a toy gun, not an actual firearm, when he committed the instant offense. Lastly, we

---

[6] Defendant testified that he "did the same thing on every one of them, all across the country, because the pill mill started like closing down in Las Vegas and you had to find another place to get the pills from."

note that the trial judge gave the jury a limiting instruction regarding evidence of other crimes.

Based on the foregoing, we find no error in the trial court's admission of the other crimes evidence at trial.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review reveals no errors patent in this case.

Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence for armed robbery.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 23, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
MARY E. LEGNON
INTERIM CLERK OF COURT

# 19-KA-195

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)        GAIL D. SCHLOSSER (APPELLEE)        THOMAS J. BUTLER (APPELLEE)

### MAILED
JANE L. BEEBE (APPELLANT)              HON. PAUL D. CONNICK, JR. (APPELLEE)
ATTORNEY AT LAW                        ZACHARY P. POPOVICH (APPELLEE)
LOUISIANA APPELLATE PROJECT            JOSHUA K. VANDERHOOFT (APPELLEE)
POST OFFICE BOX 6351                   ASSISTANT DISTRICT ATTORNEYS
NEW ORLEANS, LA 70174-6351            TWENTY-FOURTH JUDICIAL DISTRICT
                                       200 DERBIGNY STREET
                                       GRETNA, LA 70053